Todd M. Friedman (SBN 216752)
Adrian R. Bacon (SBN 280332)
Matthew R. Snyder (SBN 350907)
LAW OFFICES OF TODD M. FRIEDMAN, P.C.
21031 Ventura Blvd, Suite 340
Woodland Hills, CA 91364
Phone: 323-306-4234
Fax: 866-633-0228
tfriedman@toddflaw.com
abacon@toddflaw.com
msnyder@toddflaw.com
*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVE VACCARO, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>OROZCO'S AUTO SERVICE; DOES 1-10 Inclusive**,**<br><br>Defendant. | Case No.: 2:24-cv-3026<br><br>**CLASS ACTION**<br><br>COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF PURSUANT TO THE TELEPHONE CONSUMER PROTECTION ACT, 47 U.S.C. § 227, ET SEQ.<br><br>**JURY TRIAL DEMANDED** |

### INTRODUCTION

1. DAVE VACCARO ("Plaintiff") brings this Class Action Complaint for damages, injunctive relief, and any other available legal or equitable remedies, resulting from the illegal actions of OROZCO'S AUTO SERVICE. ("Defendant"), in negligently contacting Plaintiff on Plaintiff's cellular telephone, in violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.*, ("TCPA") and related regulations. Plaintiff alleges as follows upon personal knowledge as to himself and his own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by his attorneys.

2. The TCPA was designed to prevent calls and messages like the ones described within this complaint, and to protect the privacy of citizens like Plaintiff. "Voluminous consumer complaints about abuses of telephone technology – for example, computerized calls dispatched to private homes – prompted Congress to pass the TCPA." *Mims v. Arrow Fin. Servs., LLC*, 132 S. Ct. 740, 744 (2012).

3. In enacting the TCPA, Congress intended to give consumers a choice as to how creditors and telemarketers may call them and made specific findings that "[t]echnologies that might allow consumers to avoid receiving such calls and messages are not universally available, are costly, are unlikely to be enforced, or place an inordinate burden on the consumer. TCPA, Pub.L. No. 102–243, § 11. Toward this end, Congress found that

> [b]anning such automated or prerecorded telephone calls to the home, except when the receiving party consents to receiving the call or when such calls are necessary in an emergency situation affecting the health and safety of the consumer, is the only effective means of protecting telephone consumers from this nuisance and privacy invasion.

*Id*. at § 12; see also *Martin v. Leading Edge Recovery Solutions, LLC*, 2012 WL 3292838, at* 4 (N.D.Ill. Aug. 10, 2012) (citing Congressional findings on TCPA's purpose).

4. Congress also specifically found that "the evidence presented to the Congress indicates that automated or prerecorded calls are a nuisance and an invasion of privacy, regardless of the type of call…." Id. at §§ 12-13. See also, *Mims*, 132 S. Ct. at 744.

5. In a recent decision, the Supreme Court interpreted the term "automatic telephone dialing system" and held that "[t]o qualify as an 'automatic telephone dialing system,' a device must have the capacity either to store a telephone number using a random or sequential generator *or* to produce a telephone

number using a random or sequential number generator." *Facebook, Inc. v. Duguid*, 141 S.Ct. 1163 (2021) (emphasis added).

6. In *Duguid*, the Supreme Court provided an example of such systems, stating: "For instance, an autodialer might use a random number generator to determine the order in which to pick phone numbers from a preproduced list. It would then store those numbers to be dialed at a later time." *Id.* at 1171-72 fn. 7.

## JURISDICTION AND VENUE

7. Jurisdiction is proper under 28 U.S.C. § 1331 because this action arises under a federal statute, namely the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq*.

8. Venue is proper in the United States District Court for the Central District of California pursuant to 18 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred within this district.

## PARTIES

9. Plaintiff is, and at all times mentioned herein, was a natural individual and resident of the State of California. Plaintiff is, and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153(39). Plaintiff was physically in California at the time he received the alleged text messages from Defendant.

10. Plaintiff is informed and believes, and thereon alleges, that Defendant is a corporation of the State of California. Defendant, and all of its agents, are and at all times mentioned herein were "persons," as defined by 47 U.S.C. § 153(39). Plaintiff alleges that at all times relevant herein Defendant conducted business in the State of California and in the County of Los Angeles, and within this judicial district.

## FACTUAL ALLEGATIONS

11. On or about November 18, 2023, Plaintiff received a text message from Defendant on his cellular telephone number ending in -3928.

12. Specifically, the text message read:

> Orozco's Auto Service – Atlantic . in lieu of Thanksgiving we want to express our sincere gratitude to all customer for all your trust you put in us. Thank you, we wish you a joyous thanksgiving!

13. Defendant did not have Plaintiff's prior express consent to contact him on his cellular phone.

14. Plaintiff, on or about November 18, 2023, upon receipt of these messages, responded to Defendant's text message notification by replying "STOP".

15. Based on the content and format of these text messages, Plaintiff alleges that they were sent via Defendant's SMS Blasting Platform, i.e., an "automatic telephone dialing system," ("ATDS") as defined by 47 U.S.C. § 227(a)(1), and as prohibited by 47 U.S.C. § 227(b)(1)(A).

16. Upon information and belief, the automated text messaging system used by Defendant to send the text messages has the capacity to store or produce telephone numbers to be called, using a random or sequential number generator.

17. The text messages sent to Plaintiff's cellular telephone were sent in an automated fashion as a result of computerized campaigns that were pre-programmed in advance to send messages out to large groups of consumers all at once, either sequentially or via algorithmic dialing, i.e. in an automated fashion by a computer.

18. The texting platform uses an algorithm whereby a random or sequential number generator, similar to a randomization formula or sequential dialing formula, selects which number to dial from the stored list of numbers, and sequences those numbers in order to automatically dial the numbers and send out

text messages en masse. Thus, a random or sequential number generator Is used to both store the numbers, and to produce the stored numbers from the list, via the campaign, to the dialing platform itself.

19. Undersigned counsel have studied the code used to program other similarly-functioning autodialers in the past, with the assistance of software engineers fluent in Java, and have found that such autodialers, when used in automated mode, execute code that relies upon random or sequential number generation to both store and produce numbers to be dialed by the dialer. For instance, a common "parser" used in SMS blasters integrates the following opensource Apache code into an autodialing dialing platform:

```
730    if (!this.recordList.isEmpty()) {
731      this.recordNumber++;
732      final String comment = sb == null ? null : sb.toString();
733      result=newCSVRecord(this,this.recordList.toArray(Constants.EMPTY_STRING_ARRAY), comment,
734              this.recordNumber, startCharPosition);
735    }
736    return result;
737  }
```

20. These lines of code, and specifically the "++" in line 731, represent an operator token that generates sequential numbers as part of a loop. This loop is used to select which number from the CSV file will be dialed, and produce that number to the dialer using a CSV parser. Such programs can dial thousands of consumers in mere seconds, without any human intervention whatsoever. The sequential number generator in the code above is executed in the process of mass predictive dialing. The program cannot function, and therefore cannot dial any phone numbers at all, without this sequential number generator.

21. Plaintiff alleges that Defendant used a dialing system with the similar capacity to autodial numbers as shown above. Functionally, that is simply how text blasting systems work. They rely on random or sequential number generators to instruct the data set to produce telephone numbers to the dialer. Without this key component, a dialing campaign would require an agent to manually place the call, through organic decision making, or as was the case in *Drugid v. Facebook*, through some other organic one-to-one triggering event that instructs the dialer to place the call.

22. Plaintiff will not be able to demonstrate whether the code for Defendant's dialing system contains such random or sequential number generators without discovery and obtaining the code for the dialing platform. Plaintiff makes these allegations on information and belief based on the volume of text messages he received, and the fact that all the messages were of a prewritten one-size-fits-all form, which are indicia that they were autodialed with a SMS blaster.

23. The problem with these known realities is that because Plaintiff does not and could not ever have access to Defendant's proprietary code, which is in its sole possession, Plaintiff cannot allege with any more specificity that the system's code contains such language. However, based on detailed discussions with experts and years of litigation and expertise surrounding such technology, Plaintiff, and his counsel, have a legitimate and sufficient good faith basis to make these allegations, and assert that if the system is a traditional text blasting platform as alleged, *then it will have some variation on the coding that is described herein*, which will undoubtedly include either random or sequential number generators that are being executed in conjunction with storing and dialing the telephone numbers, including the dialing of Plaintiff's phone number.

24. The following is description, in plain English, of an automated dialer typically operates: A dialer operator accesses a database of consumer contact

information, which is typically contained in a text delimited file, either in a CSV file, text file, Microsoft Excel, or Microsoft Access file. In essence, this is a spreadsheet, containing rows and columns of data, which includes telephone numbers. The operator will load this data set into the dialing platform. The dialing system will cut the data set into individual lines, unique to each telephone number with an assigned row using a parser. Parsers will separate the data, and then index the telephone numbers using either random or sequential number generators, but most commonly sequential number generators. The program will then store the telephone number using that number generator. The data is stored in temporary cache or RAM memory, to be accessed by the dialer platform thereafter. A random or sequential number generator is programmed to select and produce, automatically, without any organic triggering event by a human being, the telephone numbers, i.e. in accessing them from storage. Once the number generator corresponds to a matching number in the stored list, that telephone number will be "produced" from storage to the dialer, which then automatically dials that telephone number. Thus, SMS blasters have the capacity to use random or sequential number generators to both store and produce the telephone number to be automatically dialed by the dialing program, without human intervention.

25. To illustrate this using a real-world example that was provided to undersigned counsel by a software engineer who is fluent in Java and has reviewed dialer code, imagine a list of numbers as a lengthy sheet of lined notebook paper. A parser cuts this into strips, and stores it in a paper tray, which is attached to a scanner. Each strip of paper has a row number, and a telephone number. The scanner uses a program to generate numbers, either sequentially or randomly. That generator is hooked to the paper feed, which instructs the scanner to match the generated number, to the corresponding strip of paper in the tray, and then scan that telephone number from the stored list, through the scanner, and out the other side, at which time the scanner is dialing the telephone number on that strip of paper.

Now imagine a scanner that accomplishes this with a tray containing thousands of pages of paper in the blink of an eye. Once the tray is empty, the dialing campaign is complete.

26. No human intervention whatsoever exists in his process other than pre-programming the parameters of the campaign, i.e. by inputting the numbers, and selecting the times/dates that the campaign will take place.

27. The telephone number that Defendant or their agent texted is assigned to a cellular telephone service for which Plaintiff incurs charges for incoming texts pursuant to 47 U.S.C. § 227(b)(1).

28. Defendant's text messages constituted calls that were not for emergency purposes as defined by 47 U.S.C. § 227(b)(1)(A)(i).

29. Defendant and their agents never received Plaintiff's prior express consent to receive unsolicited text messages, pursuant to 47 U.S.C. § 227(b)(1)(A).

30. Such text messages constitute solicitation calls pursuant to 47 C.F.R. § 64.1200(c)(2) as they were attempts to promote or sell Defendant's services.

31. Plaintiff also alleges that Defendant's text messages constitute violations of 47 C.F.R. 64.1200(c)(2), because Plaintiff's phone number was registered on the national do-not-call registry prior to Defendant's text message solicitations.

32. These text messages by Defendant, or its agents, violated 47 U.S.C. § 227(b)(1).

## CLASS ACTION ALLEGATIONS

33. Plaintiff brings this action on behalf of himself and on behalf of and all others similarly situated, as a member of the two proposed Classes (hereafter, jointly, "The Classes").

34. Plaintiff represents, and is a member of, the ATDS Class, defined as follows: All persons within the United States who received any unsolicited text messages sent using an automatic telephone dialing system or artificial voice from

Defendant, which text message was not made for emergency purposes or with the recipient's prior express consent within the four years prior to the filing of the Complaint through the date of class certification.

35. Plaintiff represents, and is a member of, the National Do-Not-Call Class (hereinafter "National DNC Class") defined as follows: All persons within the United States registered on the National Do-Not-Call Registry for at least 30 days, who received more than one call message by or on behalf of Defendant that promoted Defendant's products or services within any twelve-month period, within four years prior to the filing of this Complaint through the date of class certification.

36. Defendant, its employees and agents are excluded from the Classes. Plaintiff does not know the number of members in the Classes, but believes the Class members number in the thousands, if not more. Thus, this matter should be certified as a Class action to assist in the expeditious litigation of this matter.

37. On information and belief, class membership can be determined by Defendant's business records. Plaintiff intends to examine such records in discovery to determine the scope of, and membership in, the Classes.

38. This suit seeks only damages and injunctive relief for recovery of economic injury on behalf of the Classes, and it expressly is not intended to request any recovery for personal injury and claims related thereto. Plaintiff reserves the right to expand the Class definitions to seek recovery on behalf of additional persons as warranted as facts are learned in further investigation and discovery.

39. The joinder of the Classes' members is impractical and the disposition of their claims in the Class action will provide substantial benefits both to the parties and to the court. The Classes can be identified through Defendant's records or Defendant's agents' records.

40. Plaintiff and members of the ATDS Class were harmed by the acts of Defendant in at least the following ways: Defendant, either directly or through their agents, illegally contacted Plaintiff and the ATDS Class members via their cellular

telephones by using marketing and text messages, thereby causing Plaintiff and the ATDS Class members to incur certain cellular telephone charges or reduce cellular telephone time for which Plaintiff and the ATDS Class members previously paid, and invading the privacy of said Plaintiff and the Artificial Voice Class members. Plaintiff and the ATDS Class members were damaged thereby.

41. There is a well-defined community of interest in the questions of law and fact involved affecting the ATDS Class members. The questions of law and fact common to the ATDS Class predominate over questions which may affect individual ATDS Class members, including the following:

a) Whether, within the four years prior to the filing of this Complaint through the date of class certification, Defendant or their agents sent any text messages (other than a message made for emergency purposes or made with the prior express consent of the called party) to an ATDS Class member using any automatic telephone dialing system, or artificial voice to any telephone number assigned to a cellular phone service;
b) Whether Plaintiff and the ATDS Class members were damaged thereby, and the extent of damages for such violations; and
c) Whether Defendant and their agents should be enjoined from engaging in such conduct in the future.

42. As a person that received at least one solicitation text message using an artificial voice without Plaintiff's prior express consent, Plaintiff is asserting claims that are typical of the ATDS Class. Plaintiff will fairly and adequately represent and protect the interests of the ATDS Class in that Plaintiff has no interests antagonistic to any member of the ATDS Class.

43. Plaintiff and members of the National DNC Class were harmed by the acts of Defendant in at least the following ways: Defendant illegally contacted Plaintiff and National DNC Class members via their telephones for solicitation purposes, thereby invading the privacy of said Plaintiff and the National DNC Class

members whose telephone numbers were on the National Do-Not-Call Registry. Plaintiff and the National DNC Class members were damaged thereby.

44. There is a well-defined community of interest in the questions of law and fact involved affecting the National DNC Class members. The questions of law and fact common to the National DNC Class predominate over questions which may affect individual National DNC Class members, including the following:

a) Whether, within the four years prior to the filing of this Complaint through the date of class certification, Defendant or their agents placed more than one telemarketing/solicitation text messages to National DNC Class members whose telephone numbers were on the National Do-Not-Call Registry;
b) Whether Defendant maintains proper procedures and policies on the use of do-not-call lists, as required by 47 C.F.R. § 64.1200;
c) Whether Plaintiff and the National DNC Class members were damaged by Defendant's conduct, and the extent of damages for such violations; and
d) Whether Defendant and their agents should be enjoined from engaging in such conduct in the future.

45. As a person that received solicitation text messages from Defendant within a 12-month period, and whose phone number was registered on the National Do-Not-Call Registry, Plaintiff is asserting claims that are typical of the National DNC Class. Plaintiff will fairly and adequately represent and protect the interests of the National DNC Class in that Plaintiff has no interests antagonistic to any member of the National DNC Class.

46. Plaintiff and the members of the Classes have suffered irreparable harm as a result of the Defendant's unlawful and wrongful conduct. Absent a class action, the Class members will continue to face the potential for irreparable harm. In addition, these violations of law will be allowed to proceed without remedy and Defendant will likely continue such illegal conduct. Because of the size of the

individual member's claims, few, if any, members of the Classes could afford to seek legal redress for the wrongs complained of herein.

47. Plaintiff has retained counsel experienced in handling class action claims and claims involving violations of the Telephone Consumer Protection Act.

48. A class action is a superior method for the fair and efficient adjudication of this controversy. Class-wide damages are essential to induce Defendant to comply with federal and California law. The interest of the Class members in individually controlling the prosecution of separate claims against Defendant are small because the maximum statutory damages in an individual action for violation of privacy are minimal. Management of these claims is likely to present significantly fewer difficulties than those presented in many class claims.

49. Defendant has acted on grounds generally applicable to the Classes, thereby making appropriate final injunctive relief and corresponding declaratory relief with respect to the Classes as a whole.

**First Cause Of Action**
**Negligent Violations Of The Telephone Consumer Protection Act**
**47 U.S.C. § 227(b)**
**On Behalf of the ATDS Class**

50. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

51. The foregoing acts and omissions of Defendant constitute numerous and multiple negligent violations of the TCPA, including but not limited to each and every one of the above-cited provisions of 47 U.S.C. § 227(b).

52. As a result of Defendant's negligent violations of 47 U.S.C. § 227(b), Plaintiff and ATDS Class members are entitled to an award of $500.00 in statutory damages, for each and every violation, pursuant to 47 U.S.C. § 227(b)(3)(B).

53. Plaintiff and ATDS Class members are also entitled to and seek injunctive relief prohibiting such conduct in the future.

**Second Cause Of Action**
**KNOWING AND/OR WILLFUL VIOLATIONS OF THE**
**TELEPHONE CONSUMER PROTECTION ACT**
**47 U.S.C. § 227(B)**
**ON BEHALF OF THE ATDS CLASS**

54. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

55. The foregoing acts and omissions of Defendant constitute numerous and multiple knowing and/or willful violations of the TCPA, including but not limited to each and every one of the above-cited provisions of 47 U.S.C. § 227(b).

56. As a result of Defendant's knowing and/or willful violations of 47 U.S.C. § 227(b), Plaintiff and the ATDS Class members are entitled to an award of $1,500.00 in statutory damages, for each and every violation, pursuant to 47 U.S.C. § 227(b)(3)(B) and 47 U.S.C. § 227(b)(3)(C).

57. Plaintiff and the ATDS Class members are also entitled to and seek injunctive relief prohibiting such conduct in the future.

**THIRD CAUSE OF ACTION**
**NEGLIGENT VIOLATIONS OF THE**
**TELEPHONE CONSUMER PROTECTION ACT**
**47 U.S.C. § 227(C)**
**ON BEHALF OF THE NATIONAL DNC CLASS**

58. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

59. The foregoing acts and omissions of Defendant constitute numerous and multiple negligent violations of the TCPA, including but not limited to each and every one of the above-cited provisions of 47 U.S.C. § 227(c), and in particular 47 U.S.C. § 227(c)(5).

60. As a result of Defendant's negligent violations of 47 U.S.C. § 227(c), Plaintiff and the National DNC Class members are entitled to an award of $500.00

in statutory damages, for each and every violation, pursuant to 47 U.S.C. § 227(c)(5)(B).

61. Plaintiff and the National DNC Class members are also entitled to and seek injunctive relief prohibiting such conduct in the future.

**FOURTH CAUSE OF ACTION**
**KNOWING AND/OR WILLFUL VIOLATIONS OF THE**
**TELEPHONE CONSUMER PROTECTION ACT**
**47 U.S.C. § 227(C)**
**ON BEHALF OF THE NATIONAL DNC CLASS**

62. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

63. The foregoing acts and omissions of Defendant constitute numerous and multiple knowing and/or willful violations of the TCPA, including but not limited to each and every one of the above-cited provisions of 47 U.S.C. § 227(c), and in particular 47 U.S.C. § 227(c)(5).

64. As a result of Defendant's knowing and/or willful violations of 47 U.S.C. § 227(c), Plaintiff and the National DNC Class members are entitled to an award of $1,500.00 in statutory damages, for each and every violation, pursuant to 47 U.S.C. § 227(c)(5).

65. Plaintiff and the National DNC Class members are also entitled to and seek injunctive relief prohibiting such conduct in the future.

**PRAYER FOR RELIEF**

Wherefore, Plaintiff respectfully requests the Court grant Plaintiff, and members of The Classes, the following relief against Defendant:

**FIRST CAUSE OF ACTION FOR NEGLIGENT VIOLATION OF**
**THE TCPA, 47 U.S.C. § 227(B)**

- As a result of Defendant's negligent violations of 47 U.S.C. § 227(b)(1), Plaintiff seeks for himself and each ATDS Class member $500.00 in statutory damages, for each and every violation, pursuant to 47 U.S.C. § 227(b)(3)(B).

- Pursuant to 47 U.S.C. § 227(b)(3)(A), injunctive relief prohibiting such conduct in the future.
- Any other relief the Court may deem just and proper.

**SECOND CAUSE OF ACTION FOR KNOWING AND/OR WILLFUL VIOLATION OF THE TCPA, 47 U.S.C. § 227(B)**

- As a result of Defendant's knowing and/or willful violations of 47 U.S.C. § 227(b)(1), Plaintiff seeks for himself and each ATDS Class member $1,500.00 in statutory damages, for each and every violation, pursuant to 47 U.S.C. § 227(b)(3)(B) and 47 U.S.C. § 227(b)(3)(C).
- Pursuant to 47 U.S.C. § 227(b)(3)(A), injunctive relief prohibiting such conduct in the future.
- Any other relief the Court may deem just and proper.

**THIRD CAUSE OF ACTION FOR NEGLIGENT VIOLATION OF THE TCPA, 47 U.S.C. § 227(C)**

- As a result of Defendant's negligent violations of 47 U.S.C. § 227(c)(5), Plaintiff seeks for himself and each National DNC Class member $500.00 in statutory damages, for each and every violation, pursuant to 47 U.S.C. § 227(c)(5)(B).
- Pursuant to 47 U.S.C. § 227(c)(5)(A), injunctive relief prohibiting such conduct in the future.
- Any other relief the Court may deem just and proper.

**FOURTH CAUSE OF ACTION FOR KNOWING AND/OR WILLFUL VIOLATION OF THE TCPA, 47 U.S.C. § 227(C)**

- As a result of Defendant's knowing and/or willful violations of 47 U.S.C. § 227(c)(5), Plaintiff seeks for himself and each National DNC Class member $1,500.00 in statutory damages, for each and every violation, pursuant to 47 U.S.C. § 227(c)(5)(B) and 47 U.S.C. § 227(c)(5)(C).
- Pursuant to 47 U.S.C. § 227(c)(5)(A), injunctive relief prohibiting such conduct in the future.
- Any other relief the Court may deem just and proper.

**TRIAL BY JURY**

Pursuant to the seventh amendment to the Constitution of the United States of America, Plaintiff is entitled to, and demands, a trial by jury.

Dated: April 15, 2024                           Respectfully submitted,

                            **THE LAW OFFICES OF TODD M. FRIEDMAN, P.C.**

                                        By:  /s/ Todd M. Friedman
                                        TODD M. FRIEDMAN, ESQ.
                                             ATTORNEY FOR PLAINTIFF